HOUSTON LIGHTING AND POWER COMPANY, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–95–0026–CV.

Court of Appeals of Texas, Houston (14th Dist.).

June 6, 1996.

Rehearing Overruled July 11, 1996.

C. Charles Dippel, Houston, for appellant.

Paul Schorn, E. Hazel Woods, Jr., Austin, for appellee.

Before: MURPHY, C.J., and AMIDEI and ANDERSON, JJ.

## OPINION MOTION FOR REHEARING

AMIDEI, Justice.

The appellee's motion for rehearing is granted. We withdraw our prior opinion dated April 11, 1996, and substitute the following in its place.

Houston Lighting and Power Company (HL&P), appellant, and the State of Texas (State), appellee, both appeal from the granting of summary judgments. Both the State and HL&P filed petitions for a declaratory judgment concerning the State's duty to re-imburse HL&P the cost of relocation of electrical facilities in three locations. HL&P had its electric distribution service installed in three public utility easements dedicated by subdivision plats prior to displacement by the State for road purposes on Beltway 8, U.S. Highway 59, and State Highway 6. The trial court granted summary judgment for the State declaring it was not liable to HL&P for the relocation of its utilities in the projects known as Beltway 8 and U.S. Highway 59. HL&P appeals only that part of the judgment concerning only Beltway 8. In its brief, appellant HL&P has waived any error of the trial court with respect to its judgment respecting U.S. Highway 59. The trial court also granted summary judgment for HL&P declaring the State liable for the relocation of its utilities in the project known as State Highway 6, from which the State cross-appeals. HL&P contends in two points of error that the trial court erred in granting summary judgment for the State and denying summary judgment for HL&P. The State, in two cross-points of error, contends the trial court erred in granting summary judgment for HL&P and denying summary judgment for the State. As modified, the judgment of the trial court is affirmed.

HL&P's utilities occupied dedicated public utility easements reflected on plats of subdivisions that had been approved by the City of Houston. These easements ran parallel to Beltway 8 and Highway 6, which were widened by the State. The State acquired the lots adjoining Beltway 8 and Highway 6, which included within their boundaries the dedicated public utility easements. HL&P was ordered to relocate its utilities and did so. The State built a sound barrier on U.S. Highway 59 necessitating the raising of the power lines by HL&P that were on a dedicated public utility easement. HL&P and the State entered into written agreements whereby the State agreed to pay HL&P's relocation costs if HL&P prevailed in this lawsuit.

HL&P takes the position that it was entitled to use and occupy the dedicated public utility easements so long as the need to use it for furnishing electric distribution services continued and that this right was superior to

that of the State when it acquired the underlying fee to the lots, which were burdened with the dedicated public utility easements. The State's position is that HL&P has no property right that would authorize the State to compensate HL&P under Article I, Section 17 of the Texas Constitution, which provides for compensation when a person's property is "taken, damaged or destroyed for or applied to public use."

■ The dedications of the public utility easements to the use and benefit of the public on the plats by the owners of the subdivisions created an easement in favor of the City of Houston, for the benefit of the public, with the fee remaining in the owners, and their successors in title, subject to this easement. *Humble Oil & Refining Co. v. Blankenburg*, 149 Tex. 498, 235 S.W.2d 891, 893 (1951). Where a dedication is made for a defined purpose, neither the legislature, municipality, its successor, nor the general public has any power to use the property for any other purpose than the one designated, whether the use be public or private, or whether the dedication is a common-law or statutory dedication, notwithstanding that the changed use may be advantageous to the public. *City of Fort Worth v. Burnett*, 131 Tex. 190, 114 S.W.2d 220, 223 (1938).

In *Harris County Flood Control Dist. v. Shell Pipe Line Corp.*, 591 S.W.2d 798, 799 (Tex.1979), the Texas Supreme Court found that where a road had been dedicated for "road and street" purposes, enlarging a drainage ditch to accommodate a drainage district was not within the scope of the dedication. *Id.* at 799. In that case, Shell Pipe Line Corporation had a private easement within the roadway subject only to the dedication of the road for "road and street" purposes. Shell had to relocate its pipeline so that the District could increase the width and depth of a flood control drainage ditch. The supreme court found that Shell's easement was an interest in land and that it was entitled to compensation and that Shell's right to maintain its pipelines within the easement granted was *dominant* to the right of the District to cross the roadway because Shell's easement was granted before the District was created and was subject only to the use

of the roadway for road and street purposes. *Id.* at 799–800.

■ An oil pipe line easement is "property" within the constitutional provisions prohibiting the taking or damaging of property for public use without adequate compensation. *Magnolia Pipe Line Co. v. City of Tyler*, 348 S.W.2d 537, 540 (Tex.Civ.App.—Texarkana 1961, writ ref'd). In *Magnolia Pipe Line*, the court found that the cost of lowering a pipe line to allow the city of Tyler to pave a road over an oil pipe line easement that had been obtained from fee owners of the land many years prior to the city's acquisition of a dedicated street was recoverable from the city under Article 1, Section 17, of the Texas Constitution. *Id.* at 541–543.

The State contends that the dedication is for the use and benefit of the public and, therefore, public utility easements can also be used as public highways. The State cites *Bowen v. Ingram*, 896 S.W.2d 331 (Tex.App.—Amarillo 1995, no writ) as analogous to this case. In that case, the dedication provided "utility installations shall be so constructed as not to interfere with the free passage of motor vehicles across said strip of land." The dedication in *Bowen* was for *both* road *and utility* purposes and is not applicable to this case. *Id.* at 335. The State cites no Texas authority for the proposition that public utility easements are public places and that relocation can be required by the State without compensation to the utility occupying the public utility easement.

The State also contends that the dedication of the public utility easement does not prohibit other public uses of the property and cites *Snellen v. Brazoria County*, 224 S.W.2d 305 (Tex.Civ.App.—Galveston 1949, writ ref'd n.r.e.) as authority. In *Snellen* the court held that one public authority can *take* property of another public authority where the new public use is paramount or where the new and old public uses can coexist. *Id.* at 311. The condemnor still has to pay the condemnee damages under Article 1, Section 17, of the Texas Constitution for taking the property. *Id.* at 310. The holding in *Snellen* does not apply here.

The State's main argument is that HL&P has no property interest under Article 1, Section 17, of the Texas Constitution, and therefore they are not entitled to compensation from the State. We disagree.

In *Drye v. Eagle Rock Ranch, Inc.,* 364 S.W.2d 196 (Tex.1963), the Texas Supreme Court held, in pertinent part, as to the doctrine of estoppel in pais, or easement by estoppel:

> Most frequently the doctrine has been referred to in those cases arising out of dedication of a street, alley, or square. It is the *dedication* to the public which gives the rights in streets, parks, and similar areas the degree of certainty and permanency. . . . The doctrine has also been used or referred to in opinions dealing with situations in which the owner sells land with reference to a map or plat upon which are shown and designated streets, alleys, squares and similar areas. It has been held that when a purchaser, relying upon such representations, buys with reference thereto and spends money to make improvements, the seller will not be heard to say that such easements do not exist. [citations omitted]

> \* \* \* \* \* \*

> Because the failure of the courts clearly to explain the true nature of estoppel in pais, Tiffany suggests that many of these cases would be based more properly on a construction of the grant in the light of the surrounding circumstances and upon the doctrine of implied easements.

*Id.* at 209–10.

There are no Texas cases directly involving a State taking for other purposes a dedicated public utility easement from a utility that has used the dedicated public utility easement for public purposes. Cases such as *Magnolia Pipe Line Company v. City of Tyler,* 348 S.W.2d 537 (Tex.Civ.App.—Texarkana 1961, writ ref'd) involve takings of easements that were acquired by express grant. It is clear that the act of the dedication in this case created an "easement." It is likewise clear that HL&P relied on the representation that it was a public utility easement, invested money in the installation of its equipment,

and has operated at these locations since 1978. It is clear that the persons owning lots in the subdivisions benefited from this easement and used and relied on the electric service. It is also clear that the State is the successor in title to the owners that dedicated the public utility easements and that these easements were accepted by the City of Houston. Thus, the State acquired these lots subject to the dedicated easements. Should HL&P be required to move without any compensation, it would suffer a great financial loss and be required to pay for the relocation of its utilities.

We find that HL&P has an easement in these locations by estoppel in pais. We find that HL&P has a property right in these easements and is entitled to compensation for their relocation expenses as outlined in the agreements of the parties. Since we find that all locations involved dedicated public utility easements that created a easements in favor of HL&P, we find it unnecessary to discuss the written easements from the owners at the State Highway 6 project. We sustain HL&P's points of error one and two. We overrule the State's cross-points of error one and two.

The judgment of the trial court is reformed to read as follows:

2. With respect to the claims relating to Beltway 8, Defendant Houston Lighting and Power Company is entitled to reimbursement for the expense of relocating its facilities.

The remainder of the judgment is affirmed as modified.